UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DOUGLAS J. DEGENHARDT, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | )   No. 1:11-cv-262-JAW |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant | ) |

# REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the questions of whether the administrative law judge properly evaluated all of the plaintiff's impairments, whether there is substantial evidence to support the residual functional capacity ("RFC") assigned to the plaintiff by the administrative law judge, and whether the testimony of the vocational expert was inconsistent with the Dictionary of Occupational Titles in a manner that requires reversal. The plaintiff appeals only on his SSI claim. I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff was insured for

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on March 12, 2012, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

purposes of SSD only through September 30, 2002, Finding 1, Record at 9; that he suffered from degenerative joint disease of the knee, borderline intellectual functioning, depression not otherwise specified, and anxiety not otherwise specified, impairments that were severe but which did not, considered separately or in combination, meet or medically equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4, *id.* at 10; that he had the RFC to perform light work except that he was limited to occasional climbing of ramps and stairs, kneeling and crawling, no climbing of ladders or scaffolds, simple work (defined as unskilled work with GED reasoning levels in the range of 1 to 2), and no interaction with the public, Finding 5, *id.* at 13; that he was unable to perform any past relevant work, Finding 6, *id.* at 15; that, given his age (37, a younger individual, on the alleged date of onset of disability, September 30, 2002), high school education, work experience, and RFC, and using the Medical-Vocational Rules found in Appendix 2 to 20 C.F.R. Part 404, Subpart P (the "Grid") as a framework for decision-making, there were jobs existing in significant numbers in the national economy that were available to the plaintiff, Findings 7-10, *id.* at 15-16; and that, therefore, the plaintiff had not been under a disability, as that term is defined in the Social Security Act, at any time from August 25, 2008, the date of application, through the date of the decision, February 24, 2011, Finding 11, *id.* at 16. The Decision Review Board selected the decision for review but failed to act within 90 days, *id.* at 1-2, making the decision the final determination of the commissioner, 20 C.F.R. § 405.420(a); *Dupuis v. Secretary of Health & Human Servs.,* 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the

determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's statement of errors also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

### I. Discussion

### A. Step 2

In a brief argument, the plaintiff contends that the administrative law judge wrongly characterized his "complex medial meniscal tear" as degenerative joint disease and failed to

"evaluate" his personality disorder, which should have been included as a severe impairment at Step 2 of the sequential evaluation process. Statement of Specific Errors ("Itemized Statement") (Docket No. 12) at 1-2. The administrative law judge does not mention a personality disorder in his opinion, nor does he cite any evidence in the record to support his finding that degenerative joint disease existed.

The plaintiff points to an MRI that was read to show a complex medial meniscal tear. *Id*. at 2. However, that report says nothing about the length of time the complex tear of the medial meniscus would be expected to last, when it occurred, whether it could be surgically repaired, or what physical limitations would be imposed by either the tear itself or the surgery. An impairment, to be considered as the basis for an award of benefits, must be expected to last more than 12 continuous months or to cause death. 20 C.F.R. §§ 404.1509, 416.909. In order for an impairment to be found severe at Step 2, there must be evidence that it has more than a minimal effect on a claimant's ability to work. The plaintiff has not proffered evidence on either necessary point.[2] Accordingly, he is not entitled to remand on the basis of his argument that the administrative law judge should have found that he suffered from the meniscal tear rather than degenerative joint disease of the knee.

With respect to the plaintiff's personality disorder, he cites diagnoses by a state-agency consulting psychologist and his treating mental health provider, and "recognition" of this diagnosis by a state-agency reviewing psychologist. Itemized Statement at 2. However, he cites no evidence that he made the administrative law judge aware that he was claiming personality

---

[2] In addition, there is no evidence that the plaintiff ever informed the administrative law judge or the Social Security Administration that he claimed the medial meniscal tear as an impairment. *See* Record at 229 (Adult Disability Report, listing illnesses, injuries, or conditions that claimant contends limit his ability to work); 287, 291 (Hearing Memorandum submitted by plaintiff's attorney, no mention of medial meniscal tear although MRI report predates Hearing Memorandum).

disorder as an impairment.[3] Even if he had included this necessary information, *see, e.g., Jones v. Astrue*, No. 1:10-cv-179-JAW, 2011 WL 1253891, at *7 (D. Me. Mar. 30, 2011), *Mannix v. Astrue*, Civil No. 08-437-B-W, 2009 WL 3152880, at *2 (D. Me. Sept. 28, 2009), the plaintiff also fails to explain how finding a personality disorder to be a severe impairment would necessarily have changed the outcome of his claim, another necessary element of this appeal. *Dubois v. Astrue*, No. 2:10-cv-369-JAW, 2011 WL 4594922, at * 2 (D. Me. Sept. 30, 2011) (and cases cited therein). These failures mean that the plaintiff is not entitled to a remand, on the showing made, on the basis of the claimed errors at Step 2.

**B. RFC**

**1. MRI Evidence**

The plaintiff next contends that the RFC assigned to him by the administrative law judge "is not supported by substantial evidence." Itemized Statement at 3. Specifically, he makes several brief arguments under this heading. First, the plaintiff contends that the administrative law judge erred in giving "substantial weight" to the findings of a state-agency reviewing physician, Richard T. Chamberlin, M.D., because that physician did not see the report of the MRI that was read to show a "complex meniscal tear." *Id*. at 3-4.[4] He fails to explain, however, how that MRI "call[s Dr. Chamberlin's] conclusions into question," as required by the only authority he cites in support of his position, *Eaton v. Astrue*, No. 07-188-B-W, 2008 WL 4849327, at *5 (D. Me. Nov. 6, 2008).

---

[3] As counsel for the plaintiff pointed out at oral argument, the plaintiff's Hearing Memorandum lists "[p]ersonality disorder, not otherwise specified," under the heading "Mental Health . . . Axis II," Record at 287, but then lists, under the heading "Assessment," only "anxiety disorder, NOS; depressive disorder, NOS," and there is no mention of a personality disorder in the body of the memorandum. This entry cannot reasonably be read to put the administrative law judge on notice that the plaintiff was claiming disability due to a personality disorder.

[4] While it is accurate to suggest, as does the plaintiff, that Dr. Chamberlin did not list the MRI among the medical records he reviewed, I note that the MRI was performed on January 10, 2009, and the report was issued on January 11, 2009, Record at 423, while Dr. Chamberlin's report is dated March 3, 2009, *id*. at 388.

5

A medial meniscal tear may be repaired by surgery. *See, e.g., Harrison v. Astrue*, No. 3:09cv509/LAC/EMT, 2011 WL 1158750, at *3 (N.D. Fla. Feb. 24, 2011); *Shaner v. Astrue*, Civil No. 09-6021-AC, 2010 WL 5789151, at *3 (D. Or. Dec. 28, 2010); *Stevens v. Astrue*, Civil Action No. 6:09cv00041, 2010 WL 5798656, at *3, *4 (W.D. Va. Nov. 5, 2010) (patient would be off work for six weeks after surgery before returning to heavy labor job); *Lewis v. Astrue*, No. 5:08-CV-412-FL, 2009 WL 2579644, at *6 (E.D. N.C. Aug. 17, 2009) (following surgical repair of complex tear of posterior medial meniscus, plaintiff returned to regular duty work within 5 months). It is certainly possible that the plaintiff's tear was not repairable, but the burden to produce medical evidence to that effect is on the plaintiff, and he has not carried that burden here. *See Bates v. Astrue*, No. CV-09-156-JPH, 2010 WL 3860468, at *9 (E.D. Wash. Sept. 29, 2010) (when plaintiff reported ability to walk two months after surgical repair of medical meniscus tear, ALJ properly found that knee problem did not meet 12-month durational requirement).

### 2. Limits on Ambulation

In a single paragraph, the plaintiff next assigns as error the administrative law judge's failure to include in his decision or in his hypothetical question to the vocational expert "any restrictions to walking" despite his finding that the plaintiff's severe impairments "limit the claimant's ability to ambulate effectively." Itemized Statement at 4. He cites in support of this argument only his own reports and testimony that "his knee impairment impacted his ability to walk." *Id.*

The administrative law judge gave valid and sufficient reasons for discounting the plaintiff's testimony about "the intensity, persistence and limiting effects" of his symptoms. Record at 13-15. He mentioned the MRI that was read to show a complex medial meniscal tear

6

in the right knee, following radiographic imaging of that knee that "was unremarkable." *Id*. at 14. He did, of course, find that degenerative joint disease of the knee had "more than a minimal effect on this ability to perform work-related activities," *id*. at 10, which was necessary in order to find that this impairment was "severe" at Step 2. However, contrary to the plaintiff's characterization, Itemized Statement at 4, the administrative law judge did not find or note that the plaintiff's impairments "limit the claimant's ability to ambulate effectively," but rather stated that the severe impairments "reportedly limit the claimant's ability to ambulate effectively and perform unskilled work." Record at 10. In fact, the administrative law judge found that the plaintiff's degenerative joint disease did not meet or equal a Listing because "there is no evidence of an inability to ambulate effectively." *Id*. at 11.

Accordingly, no error has been demonstrated in the administrative law judge's decision not to include any limitations on walking in the RFC that he assigned to the plaintiff.

### 3. Dr. Werrbach

The plaintiff next faults the administrative law judge for his treatment of the opinion of James Werrbach, Ph.D., a state-agency consulting psychologist who examined the plaintiff. Itemized Statement at 4-8. He asserts that the specific errors were the "substitut[ion] of [the administrative law judge's] own conclusions for those of Dr. Werrbach, and in doing so . . . erroneously interpret[ing] raw data," a failure to consider the GAF score assigned to him by Dr. Werrbach, and a failure to include in the assigned RFC a "restriction for work in public and/or crowded areas." *Id* at 6-7, 8.

First, there is no statutory, regulatory, or case law requirement that an administrative law judge adopt the conclusions of a consulting medical expert. The administrative law judge did reject some of Dr. Werrbach's conclusions. He wrote:

7

> The undersigned is not persuaded by Dr. James Werrbach's opinion, as it is conclusory in nature, and represents a fairly extreme assessment that is not supported by the objective medical evidence of record as a whole (Exhibit 11F). Dr. Werrbach indicated that the claimant would have difficulty doing work-related activities such as understanding and memory except for tasks that were very simple in nature. The doctor further indicated that the claimant would have difficulties socially interacting with others and concentrating. However, the record reveals the claimant was able to actively participate in group therapy sessions and to follow discussions without difficulty. Accordingly, the undersigned can assign the opinion only limited weight. Nevertheless, Dr. Werrbach's observations and findings are not ignored and have been considered in providing insight as to functional ability and how they [sic] affect the claimant's ability to work (20 C.F.R. §§ 404.1513(d)(1) and 416.913(d)(1)).

Record at 14-15.

Dr. Werrbach stated his conclusions as follows:

> It would appear that Mr. Degenhardt would have difficulty doing work-related activities such as understanding and memory except for tasks that were very simple in nature and did not involve many steps because of his limited cognitive ability. His ability for sustained concentration and persistence also appears to be limited because of his panic symptoms. His ability to socially interact with others and adapt to new social situations also appears to be quite limited due to his panic symptoms. It would also appear that Mr. Degenhardt has had many difficulties in the past with his interactions with other people and his ability to tolerate intimacy with them. If Mr. Degenhardt is thought to be eligible for disability payments, it is the opinion of this interviewer that another payee be found for him because of his ongoing usage of intoxicating substances and his limited cognitive abilities.

*Id*. at 400. Dr. Werrbach assigned the plaintiff a "current GAF" of 40. *Id*.

Contrary to the plaintiff's contention, the administrative law judge did not "substitute[] his own conclusions for those of Dr. Werrbach[,]" nor did he "erroneously interpret[] raw [medical] data." Itemized Statement at 6-7. Rather, he gave "substantial weight" to the conclusions of Brenda Sawyer, Ph.D. (Exhibit 13F), a state-agency reviewing psychologist, who reviewed Dr. Werrbach's report, Record at 414, as well as considerably more record evidence

8

than Dr. Werrbach reviewed. *Compare id*. at 396 (Dr. Werrbach based his report on an interview with plaintiff, administration and results of Wechsler Adult Intelligence Scale - III, and progress note of Meredith Bolster, LCSW, dated 12/30/08) *with id*. at 414 (Dr. Sawyer saw 9/08 "Pen Comm Hlth" notes, 9/08 & 12/08 Summer St. Clinic notes, Dr. Werrbach report). Dr. Sawyer's conclusions, among others, were "Claimant can understand and remember simple tasks . . . . can attend to and persist at simple tasks over the course of a normal workday/workweek . . . . has adequate social skills to interact with co-workers and supervisors . . . is not suitable for work with the public or in public and/or crowded areas . . . . requires a routine with few changes day to day." *Id*. at 418. This is remarkably similar to the mental aspects of the RFC assigned to the plaintiff by the administrative law judge: "The claimant is limited to simple work[.] He can interact with co-workers and supervisors, but not with the public." *Id*. at 13. Any suggestion that the administrative law judge reached this conclusion on his own, by interpreting raw medical data, is clearly erroneous.

The plaintiff makes much of Dr. Werrbach's score of 40 for his Global Assessment of Functioning ("GAF") as of April 27, 2009. Itemized Statement at 7-8. He notes that his score is "consistent" with the only other GAF score in the record, one of 45 assigned to him by a medication management nurse on February 10, 2009. *Id*. He points out that a score of 31 to 40 indicates "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood[.]" *Id*. at 7. Of course, neither of these scores is below 40 and the second does not come from an acceptable medical source. 20 C.F.R. §§ 404.1513(a), 416.913(a). The fact this this court has previously observed that a GAF score of 50 "indicates that [an individual] was likely experiencing great difficulty functioning in the workplace[,]" *Bickford v. Barnhart*, 242 F.Supp.2d 39, 43 (D. Me. 2002), as the plaintiff notes, Itemized Statement at 8, makes no

9

difference here. The administrative law judge chose to rely on Dr. Sawyer's conclusions, which are clearly inconsistent with such a GAF score. The administrative law judge was within the scope of his authority in making such a choice.

Finally, the plaintiff asserts that the administrative law judge committed a fatal error when he "failed to incorporate the restriction for work in public and/or crowded areas in his RFC." Itemized Statement at 8. This argument is confusing, because the administrative law judge's RFC includes the statement that the plaintiff cannot "interact with . . . the public." Record at 13. The plaintiff does not suggest how this restriction differs from Dr. Sawyer's opinion that he "is not suitable for work with the public or in public," *id*. at 418, and no substantive difference is apparent to me. If an individual is not to interact with the public while working, it is similarly difficult to see how it is likely that he will be working in "crowded areas." None of the three jobs identified by the vocational expert as being available to the plaintiff in response to the administrative law judge's hypothetical question – flagger, cleaner, and inspector – is inherently likely to be performed in "crowded areas." Any error in failing to include this permutation of a bar on interaction with the public in the plaintiff's RFC is harmless, at best.

## C. Vocational Testimony

The plaintiff's final challenge is to the testimony of the vocational expert in response to the hypothetical question posed by the administrative law judge. Itemized Statement at 8-11. Specifically, he asserts that the vocational expert's testimony about the flagger job was inconsistent with the Dictionary of Occupational Titles, and there is no way to tell whether the inspector job is consistent with that authority. *Id*. at 9-10. With respect to all three identified jobs, the plaintiff contends that the vocational expert's testimony is "not reliable" because the

RFC included in the hypothetical question posed to the vocational expert "failed to include any limitations or extent of limitations which may have resulted from a determination regarding Plaintiff's knee condition and personality disorder." *Id*. at 10-11.

In Section I.A., *supra*, I have already explained why the plaintiff's claims arising from the alleged mischaracterization of his knee condition and his alleged personality disorder, on the showing made, do not demonstrate error on the part of the administrative law judge. Therefore, there is no need to address the plaintiff's challenge to the vocational expert's testimony based upon limitations resulting from the plaintiff's knee condition and personality disorder. This conclusion, in turn, makes it unnecessary to consider the plaintiff's first challenge to that testimony, because, as counsel for the plaintiff conceded at oral argument, that challenge does not include the cleaner job, and this court has repeatedly held that the availability of a single job in the national economy satisfies the commissioner's burden of proof at Step 5 of the sequential evaluation process. *See, e.g., Conley v. Astrue*, No. 2:10-cv-303-DBH, 2011 WL 4571870, at *3 (D. Me. Sept. 29, 2011).

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de</u> <u>novo</u> review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

***Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.***

Dated this 29th day of March, 2012.

                                              /s/ John H. Rich III
                                              John H. Rich III
                                              United States Magistrate Judge